# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

SANTIAGO TERAN,

    Petitioner,

v.

TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:17-cv-9

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Santiago Teran ("Teran"), who was previously incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, (doc. 7), to which Teran filed a Reply, (doc. 8). For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Teran's Petition **without prejudice**, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Teran *in forma pauperis* status on appeal.

## BACKGROUND

Teran is serving a 360-month term of incarceration for conspiracy to possess a controlled substance with intent to distribute and possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Doc. 7-1, pp. 2, 13–17.) He has a projected release date of January 8, 2018, via good conduct time release, to be followed by 120 months of supervised release. (Id. at pp. 6–11.) On April 9, 1998, the Bureau of Immigration and Customs Enforcement ("ICE"), formerly the Immigration and Naturalization Service, issued a detainer against Teran. (Id. at p. 23.) As Respondent explains, "Immigration Detainers are

placed with correctional facilities for notification purposes; the ICE detainer for Petitioner, . . . indicates that Petitioner should be held for possible deportation by the Department of Homeland Security after the 360-month sentence imposed by the U.S. District Court for the Southern District of California has been served." (Doc. 7, p. 3 (citing Doc. 7-1, pp. 2 12–17, 24).)

## DISCUSSION

In his Petition, Teran asks the Court to "[c]ompel ICE/DHS and District Director of ICE, Phoenix, AZ to clear detainer placed on 11/04/1997." (Doc. 1, p. 6.) He contends that the detainer is a violation of his due process rights and that he needs the detainer cancelled so that he can be placed in a halfway house. (Id. at pp. 6–7.)

Respondent advances numerous grounds to dismiss Teran's Petition. (Doc. 7.) Respondent contends Teran failed to exhaust his administrative remedies before filing his Petition. (Id. at pp. 5–6.) Moreover, Respondent contends that Teran's claims challenge the conditions of his confinement, and therefore, cannot be brought under Section 2241. (Id. at pp. 7–8.) Respondent also asserts that the immigration detainer against Teran is not "custody" for Section 2241 purposes. (Id. at pp. 6–7.)

**I. Whether Teran Exhausted his Administrative Remedies**

**A. Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the

exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court recently "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

3

on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In <u>Turner v. Burnside</u>, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[2] First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. <u>Id.</u> at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. <u>Id.</u> However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. <u>Id.</u> Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" <u>Id.</u> "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." <u>Id.</u> at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. <u>See</u> <u>Bryant</u>, 530 F.3d at 1376–77.

**C.    Analysis of Teran's Efforts at Exhaustion**

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 7-1, pp. 2–3.) If unsatisfied with the resolution of that grievance, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch using a BP-10 form, so long as the

---

[2] Although <u>Turner</u> involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in <u>Turner</u> would be no less applicable to a Section 2241 proceeding. <u>See</u> <u>McCoy v. Glidewell</u>, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting Section 2241's exhaustion requirements and <u>Turner</u>'s application of exhaustion standards to a Section 2241 petition).

appeal involves BOP-related matters.³ (Id. at pp. 3, 26–32.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel using a BP-11 form. (Id.) If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. (Id. at p. 3.)

Teran's claims concern BOP-related matters that must be appealed through the above-described process. However, Teran has not filed any administrative remedy filings related to the allegations raised in his Petition. (Id. at pp. 33–64.) In his Petition, Teran admits that he did not "appeal the decision [he is challenging], file a grievance, or seek an administrative remedy." (Doc. 1, p. 2.) In his Reply, he makes arguments regarding the availability of the administrative remedies, but he implicitly concedes that he did not exhaust any administrative remedies before filing this action. (Doc. 8.) Thus, even accepting Teran's version of facts as true, under the first Turner step, he failed to exhaust D. Ray James' administrative remedies before filing his Petition.

Teran asks the Court to excuse his failure to file a grievance because prison authorities "refuse[d] or failed to give petitioner the appropriate grievance forms despite his requests." (Id. at p. 1.) Construing Teran's arguments liberally, he contends that D. Ray James' administrative remedies are not available to him. Though the Supreme Court has rejected a "special circumstances" exception, it reiterated that a prisoner need only exhaust those remedies which were available to him. Ross v. Blake, ___ U.S. at ___, 136 S. Ct. at 1858. The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. ___ U.S. at ___, 136 S. Ct. at 1859. First, the

---

³ Examples of BOP-related matters which must be appealed through the BOP are: classification, designation, sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. (Doc. 7-1, p. 32.)

6

Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id. (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id.

Under the first Turner step, where the Court must accept Teran's allegations as true, he arguably establishes that D. Ray James officers "thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id., ___ U.S. at ___, 136 S. Ct. at 1860. He contends that he requested grievance forms from prison officials but they refused to give them to him.

However, Teran's claims of unavailability readily wither when subjected to the crucible of examination the second Turner step requires. Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. Turner, 541 F.3d 1083. Having reviewed all of Teran's and Respondent's filings, the Court finds Respondent's account of the availability of administrative remedies more credible than Teran's account. Even though the form that Teran used to file his Petition asked Teran why he did not file a grievance, he never mentioned that

7

prison officials denied his requests for forms. (Doc. 1, p. 3.) To the contrary, he stated that he was "waiting on ICE/DHS to take care of my case within the 180 days['] time frame." (Id.) In his Reply, Teran abandoned this story and has now come up with a new one. He now baldly states that "prison officials" failed to provide him grievance forms. However, he provides no details whatsoever to support this assertion. For instance, he does not state when he requested grievance forms or identify the prison official who denied that request. In contrast, Respondent attaches evidence that Teran could obtain grievance forms from a unit team counselor at D. Ray James. (Doc. 7-1, p. 29.) Moreover, Respondent's attachments reveal that Teran has filed numerous grievances during his incarceration. (Id. at p. 53.) This evidence thwarts Teran's conclusory and unsupported allegations of unavailability.

Because Teran failed to exhaust the administrative remedies that were available to him, the Court should **DISMISS** Teran's Petition.

## II. Whether Teran can Challenge his Detainer via Section 2241

Additionally, Teran cannot challenge the detainer or other conditions of his confinement in this Section 2241 action. Such claims would ordinarily be brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The distinction between claims which may be brought under Bivens and those which must be brought as habeas petitions is reasonably well settled. Claims in which prisoners challenge the circumstances of their confinement are Bivens actions, not habeas actions. See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006). Habeas actions, in contrast, explicitly or by necessary implication, challenge a prisoner's conviction or the sentence imposed on him by a court (or under the administrative system implementing the judgment). Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Thus, for example, when a prisoner makes a claim that, if successful, could shorten or

invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim. See, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994).

In Caba v. United States, No. CV310-082, 2010 WL 5437269 (S.D. Ga. Nov. 30, 2010), *report and recommendation adopted*, 2010 WL 5441919 (S.D. Ga. Dec. 27, 2010), this Court determined a petitioner's allegations concerning his security classification—specifically the BOP's "imposition of a PSF of 'Alien'"—was a challenge to the conditions of the petitioner's confinement and were not cognizable in a Section 2241 petition. 2010 WL 5437269, at *2. However, this Court has since determined a petitioner can challenge his security classification or place of confinement via Section 2241.[4] Baranwal v. Stone, No. CV 314-098, 2015 WL 171410, at *2 (S.D. Ga. Jan. 13, 2015); Herrera v. Johns, Civil Action No. CV513-031, 2013 WL 5574455, at *1 n.1 (S.D. Ga. Oct. 8, 2013). Other courts have reached this same conclusion. See United States v. Saldana, 273 F. App'x 845 (11th Cir. 2008); Becerra v. Miner, 248 F. App'x 368 (3d Cir. 2007); Wrobel-Molina v. United States, Civ. No. 09-1080-CV-W-NKL-P, 2010 WL 1486055, at *2 (W.D. Mo. Apr. 14, 2010).

Courts in the Fifth Circuit note the distinction between a Section 2241 and a civil rights action "becomes 'blurry' when an inmate challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody." Pham v. Wagner, No. 5:14-CV-67(DCB)(MTP), 2016 WL 5852553, at *2 (S.D. Miss. Oct. 6, 2016) (citing Carson v. Johnson, 112 F.3d 818, 820–21 (5th Cir. 1997)). As a result, the Fifth Circuit Court of Appeals has "'adopted a simple, bright-line rule for resolving such questions.' If a favorable determination of an inmate's claims would not automatically entitle the inmate to

---

[4] Respondent's citation to case law finding Section 2241 is not the proper vehicle by which to challenge a PSF is not erroneous. (Doc. 7, pp. 7–8.) The above contrary citations merely illustrate that, as a whole, there is not a consensus on this issue.

9

accelerated release, the proper vehicle is a civil rights suit." Id. (quoting Carson, 112 F.3d at 820–21). If a petitioner is not seeking immediate or early release from custody and is instead seeking to have his public safety factor of "deportable alien" or detainer removed so that he will be eligible for programs that could reduce his sentence, he has not alleged that a favorable determination would automatically entitle him to a speedier release from custody. Thus, the proper vehicle for raising his claims would be a civil rights suit. Id.; see also Boyce v. Ashcroft, 251 F.3d 911, 914 (10th Cir. 2001) ("Prisoners who raise constitutional challenges to other prison decisions—including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, e.g., conditions of confinement, must proceed" with a civil rights lawsuit.).

I find the Fifth Circuit's test to be proper for resolving this question. Based on that test, Teran cannot pursue his claims in this Section 2241 Petition because he is not seeking immediate or early release from custody. While a favorable determination may entitle him to participate in programs that could reduce his sentence, a favorable determination does not automatically entitle him to a speedier release from custody. Therefore, the Court should **DISMISS** Teran's Petition for lack of jurisdiction. Even if this Court has jurisdiction over Teran's Petition, his claims would still be subject to dismissal for the reasons discussed in Section I of this Report.

### III. Whether Teran is "in Custody" Pursuant to the ICE Detainer for Section 2241 Purposes

According to Respondent, Teran's ICE detainer does not constitute custody for Section 2241 purposes. Respondent states Teran's assertions are premature because he is in BOP custody, and removal proceedings have yet to begin. (Doc. 7, pp. 6–7.)

"A detainer serves to advise another law enforcement agency that the [Department of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the

purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). "The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." Id.

Respondent states that, in the Eleventh Circuit, "immigration detainers only constitute 'custody' for purposes of habeas proceedings when the Government has commenced removal proceedings to determine whether the petitioner is removable from the United States. (Doc. 7, p. 7 (citing Orozco v. U.S. INS, 911 F.2d 539, 541 (11th Cir. 1990).)[5] Indeed, the Eleventh Circuit has held that the filing of a detainer, standing alone, does not cause a prisoner to come within the custody of the Department of Homeland Security or ICE. Oguejiofor v. Att'y Gen. of the U.S., 277 F.3d 1305, 1308 n.2 (11th Cir. 2002); Orozco, 911 F.2d at 541. This position is in accord with several other Courts of Appeals. See, e.g., Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 539 (5th Cir. 2003); Garcia v. Taylor, 40 F.3d 299, 303–04 (9th Cir. 1994); Santana v. Chandler, 961 F.2d 514, 516 (5th Cir. 1992); Prieto v. Gulch, 913 F.2d 1159, 1162 (6th Cir. 1990); Mohammed v. Sullivan, 866 F.2d 258, 260 (8th Cir. 1989). "The underlying rationale of these courts is that a detainer, as distinguished from other [ICE] orders, does not put a 'hold' on" the individual. Ryan v. Dep't of Homeland Sec., No. 3:09cv399/LAC/MD, 2010 WL 1433166, at *1 (N.D. Fla. Mar. 8, 2010); accord Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) (noting that the lodging of a detainer, without more, is insufficient to render the alien "in custody").

---

[5] Since Orozco, the Eleventh Circuit has held that challenges to removal proceedings cannot be brought under Section 2241. Themeus v. U.S. Dep't of Justice, 643 F. App'x 830, 832 (11th Cir. 2016) ("Following enactment of the REAL ID Act of 2005, district courts lack habeas jurisdiction to entertain challenges to final orders of removal.").

Generally, a detainer is viewed as "an informal process advising prison officials that a prisoner is wanted on other pending charges and requesting notification prior to the prisoner's release." Orozco, 911 F.3d at 541 n.2 (citing United States v. Shahryar, 719 F.3d 1522, 1524 n.3 (11th Cir. 1983)). "In the immigration context, a detainer usually serves only as a notice to prison authorities that . . . ICE is going to be making a decision about the deportability of the alien in the future." Ryan, 2010 WL 1433166, at *1 (citing Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir. 1988)). "The reasoning follows that the detainer does not serve to establish conclusively either present or future restraints on the prisoner's liberty." Id. "Because there is no actual claim to the individual following the completion of his criminal sentence, there is no custody." Id.

Thus, Teran is not "in custody" of ICE for purposes of Section 2241 simply because ICE lodged a detainer against him. Furthermore, Teran does not contend that ICE served him with an order to show cause or a final deportation order or that there was some other reason he should be considered to be in the custody of ICE. See Alanis-Bustamonte v. Reno, 201 F.3d 1303, 1309 (11th Cir. 2000) (a show cause order, in combination with a warrant on a detainer, is a prerequisite to formal commencement of removal proceedings). Indeed, he contends that he "a Cuban National and cannot be deported at this time." (Doc. 1, p. 6.) Because Teran is not "in custody" of ICE at this time, this Court lacks subject matter jurisdiction under 28 U.S.C. § 2241 to address his claim.

Accordingly, the Court should **DISMISS** this portion of Teran's Petition.

## IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Teran leave to appeal *in forma pauperis*. Though Teran has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the

12

Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Teran's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Teran *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice** Teran's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I further **RECOMMEND** that the Court **DENY** Teran leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Teran and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 17th day of October, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA